### ESTATE OF FREDERICA A. TITTEL.
No. 4681—1872.

WILL—CHARGE TO JURY on contest of probate.
INOFFICIOUS, WILL AB IRATA.
MENTAL INCAPACITY, RESTRAINT, UNDUE INFLUENCE, FRAUDULENT MISREPRESENTATION, DELUSION.

*George & Loughborough* and *McAllister & Bergin* for proponents.

*W. Van Dyke, C. V. Grey* and *E. D. Sawyer*, contra.

Deceased was about seventy-five years of age at the date

of the proposed will.  She was offended with her sons, Frederick, Charles, August and William, for the opposition made by them to her claims in the administration and distribution of the estate of her husband, their father, who died intestate in 1864, leaving valuable property on Kearny street.  By this will she gives all her property to her sons Ernst and Conrad, her daughter Mrs. Himmelman, and her granddaughters Mrs. Humburg and Mrs. Boehme; and she disinherits her four sons first above named, for the reasons, expressed in the will, that they had been undutiful to her, and had caused her expensive litigation, and that they were already sufficiently provided for.  William was in Mexico during the litigation referred to, but was represented by his brother Frederick in opposition to his mother.  Upon his return the matter had been adjusted; and William ratified, as was contended on the trial, all that his brother Fred. had done, thereby making himself as much a party to that proceeding as if he had been personally present.  August and William are both dead, but their minor children were represented at the trial by a guardian *ad litem*.  Eight days were occupied in the trial.  The principal issues submitted to the jury were, whether the deceased was of sound and disposing mind, whether she executed the will without restraint, undue influence or fraudulent misrepresentation, and whether she was under a delusion as to the conduct of her sons, or any of them, who were disinherited.

The following is the charge to the jury upon the issues referred to:

1.  As to sound and disposing mind:

A sound mind is one wholly free from delusion.  Weak minds differ from strong minds only in the extent and power of their faculties; unless they betray symptoms of delusion, their soundness cannot be questioned.  It is not the *strength* of a mind which determines its freedom from delusion; it is its *soundness*.  Thus, it is often said that such or such a distinguished man has a sound mind; yet a man in the plainer walks of life, of faculties of less extent or power, may be equally sound.  The latter is of sound mind equally with the former if free from delusions.  Delusion of mind is to

an extent insanity. The main character of insanity, in a legal view, is said to be the existence of a delusion: that is, that a person should pertinaciously believe something to exist which does not exist, and that he should act upon that belief. Belief of things which are entirely without foundation in fact and which no sane person would believe, is insane delusion; that is, when a person believes things to exist only, or at least, in that degree only, in his own imagination, and of the non-existence of which, neither argument nor proof can convince him—that person is of unsound mind. If he be under a delusion, though there be but partial insanity, yet if it be in relation to the act in question, it will defeat a will which is the direct offspring of that partial insanity. Thus, in one case where the testator conceived the groundless delusion that his nephew had conspired to effect his death, the will was set aside. On the other hand, in *Clapp* v. *Fullerton*, 34 N. Y., 190, it was held that the will could not be rejected on the ground that the testator entertained the idea that one of his daughters was illegitimate, if this belief was not founded on insane delusion, but upon slight and insufficient evidence acting upon a jealous and suspicious mind. Belief based on evidence, however slight, is not delusion. One person from extreme caution or from a naturally doubtful frame of mind, will require proof before acting, amounting, perhaps, to demonstration; while another, of different faculties but of equally sound mind, will act upon very slight evidence. Delusion rests upon *no* evidence whatever; it is based on mere surmise.

To apply these general principles to the case in hand: If Mrs. Tittel believed that her sons—Frederick, August, Charles, and William—had evinced toward her an unfriendly or unfilial spirit, or that they had caused her unnecessary litigation, and if that belief was entirely without foundation in fact; if the belief was the product of her own imagination, and if the script proposed as her will was made under such belief, and if she was influenced and controlled by such belief in making it, then she was not of sound mind, but was under a delusion, and the script so far is not her will. On the contrary, if she believed that her said sons had evinced

toward her an unfriendly or unfilial spirit, or had caused her unnecessary litigation, and any fact existed as a foundation for that belief, she was not laboring under delusion and the script is her will, however much she might have been mistaken in the conclusions at which she arrived. Therefore you will ask yourselves, did Frederick, August, Charles and William evince toward her an unfriendly spirit? Did they evince toward her an unfilial spirit? Were the proceedings formerly had in this Court regarding her removal as administratrix, instituted or countenanced by them? Were those proceedings of an unfriendly or unfilial character? Did they cause her unnecessary litigation? Did any fact exist which could cause a sane mind to believe that such was the case? If you answer yea to either of these questions, she was not laboring under a delusion regarding the same. If you shall answer *no* to all of these questions, but shall find that any fact existed and was known to her upon which she could base an opinion that her sons had thus acted, she was not laboring under a delusion respecting the same. A person may act upon weak testimony, yet be under no delusion. If you answer *no* to each of the questions above suggested, and shall find that no fact existed upon which a sane mind would form such opinion as is expressed in the script, then she was under delusion.

It may be true that she was laboring under delusion as to some of her said sons, and not as to others. That is, it may be true that Frederick, Charles or August did evince an unfriendly or unfilial spirit toward her, or did cause her unnecessary litigation, and that William did neither; or it may be that August and William, or Charles and August, or Frederick and William were thus unkind, and the other was not. If so, she may have been under delusion as to one or two, and not as to the other or others. It does not necessarily follow that there was delusion as to all because there was delusion as to some. If there was delusion as to some and not as to others, you will so state and specify in your verdict.

It may be added that it may be that there was delusion as to the acts of her said sons, and yet the script stand as a

will. She gives as a reason for disinheriting them and their offspring, not only the acts enumerated, but also because she deemed them already sufficiently provided for. Did the delusion also extend to that? Had they been, or were they already provided for? It is not for you to say whether the provision was sufficient—the sufficiency was for her to determine. She had as much right to judge that $1,000 was a sufficient provision as that $10,000 was required. Was she under a delusion in believing that her said sons or either of them had been provided for? If they, or either of them, had *not* been at all provided for, she was under delusion respecting the same.

2. Was she under restraint?

That is, did she execute the instrument by physical compulsion, or by fear or coercion? Was she so surrounded by those who desire to sustain this will, as that she could not and did not express her own wishes, and exercise her own judgment? Restraint refers to physical restraint, rather than mental influence.

3. Was she under undue influence?

A will produced by undue influence cannot stand. Undue influence is any kind of influence, either through fear, coercion or importunity, by which the testator is prevented from expressing his true mind. A question of this kind is not likely to arise, except in regard to persons of naturally weak mind or facile disposition, or where such has become their condition either from age or disease. It must, of course, be an influence adequate to control the free agency of a testator. It is very properly said: "A testator should enjoy full liberty and freedom in making his will, and possess the power to withstand all contradiction and control. That degree, therefore, of importunity or undue influence which deprives a testator of his free agency, which is such as he is too weak to resist, and will render the instrument not his free and unconstrained act, is sufficient to invalidate it." I have a legal right to ask of a person making his will, that he direct his property to go in any given channel; I may even urge and importune him; and if he have strength of mind sufficient to determine for himself, the will is good, even though he adopt

my suggestions; but if I ask or importune a weak mind, one exhausted by disease or otherwise, to such an extent that he do not have sufficient strength of mind to determine for himself, so that the proposed script expresses *my* views and wishes rather than his own, it is not his will. If the testatrix had sufficient memory and intelligence to fairly and rationally comprehend the effect of what she was doing, to appreciate her relations to the natural objects of her bounty, and understand the character and effect of the provisions of the will; if she had a reasonable understanding of the nature of the property she wished to dispose of, and of the persons to whom, and the manner in which she wished to distribute it, and did so express herself, it is good. It is not necessary that she should have acted without prompting. Importunity or influence to have the effect of invalidating a will, must be in such a degree as to take away her free agency.

You will apply these principles to this controversy, and in doing so, ask yourselves such questions as these:

Had Mrs. Tittel, at the time the script was executed, sufficient memory and intelligence to fairly and rationally comprehend the effect of what she was doing? Did she understand and appreciate her relations to her children and grandchildren, and did she understand the character and effect of the provisions of the will? Did she have a reasonable understanding of the nature of the property to be disposed of and of the persons to whom she wished to distribute it? Did she exercise her own choice, and did she express her own wishes? If she did have such understanding, she had the legal right to make any disposition of her property that she pleased. If she acted freely and with proper understanding, she had a legal right to disinherit every child and send her property to strangers. Neither courts nor juries can say whether this legacy or that is a prudent or wise one to make; by attempting to do so, we should attempt to make *our* will take the place of that of the testator. It is your province in this case, gentlemen, and in regard to the point now under consideration, only to say whether, under the principles above given you, this script was executed under undue influence.

2

4. As to fraudulent misrepresentation. In order that the will should have been executed under fraudulent misrepresentation, it is not necessary to consider the question of delusion or insanity. A person may be of perfectly sound mind, and yet be influenced by fraudulent misrepresentations. You will therefore inquire, whether the will contains any provision which was not communicated to her, or which was wrongly read to her, or which she was induced to believe was different from what appears in it; or whether false and fraudulent representations were made to her for the purpose of inducing her, and did induce her, to disinherit any one; whether any person interested in sustaining the will, falsely and fraudulently represented to her and caused her to believe that Frederick, Charles, August or William had evinced an unfriendly or unfilial spirit toward her, or had caused her litigation, to such an extent that she was governed and controlled by such false and fraudulent misrepresentations. If said sons named had committed those acts, it was neither false nor fraudulent for any person to say so to her. But if they had not so acted, it was false to say so to her, and it was fraudulent if said with the purpose of inducing her to disinherit said sons, in case it had that effect.

Misapprehension alone will not avoid a will. To have that effect, it must have been caused by fraudulent misrepresentations.